**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.  ) | Criminal No. 15-10046-LTS |
| ) | |
| **MARTIN LUSTGARTEN ACHERMAN,** ) | |
| ) | |
| Defendant.  ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPEAL
OF MAGISTRATE JUDGE'S ORDER OF PRE-TRIAL DETENTION**

The United States of America, by and through its undersigned attorneys, hereby requests that the Court deny the Appeal of Magistrate Judge's Order of Pre-Trial Detention filed by defendant Martin Lustgarten Acherman ("Lustgarten"). The Appeal of Magistrate Judge's Order of Pre-Trial Detention must be denied because no condition or series of conditions can "reasonably assure the appearance of the [Defendant] as required." 18 U.S.C. § 3142(e)(1); *See United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir.1991). Lustgarten is a significant risk of flight because he, (1) is neither a citizen nor a permanent resident of the United States; (2) faces a maximum sentence of twenty years in prison in the high likelihood he is convicted; (3) maintains strong familial, financial, or occupational ties to at least seven foreign countries, including Venezuela, which will not extradite to the United States; (4) has access to staggering amounts of money; and (5) has a history of lying to U.S. government officials.

**APPLICABLE LAW**

A defendant may be detained pending trial only after a finding by a judicial officer, following a hearing held pursuant to 18 U.S.C. § 3142(f), that "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of

any other person and the community . . . ." 18 U.S.C. § 3142(e). The Government can move to have a defendant detained pending trial in a case that involves a serious risk that the defendant will either (A) flee from prosecution; or (B) "obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2).

When he or she is ordered detained by a magistrate judge, a defendant may move the court with original jurisdiction for revocation or amendment of the detention order. 18 U.S.C. § 3145(b). The district court reviews the magistrate judge's detention or release order *de novo*. *United States v. Tortora,* 922 F.2d 880, 883 n. 4 (1st Cir.1990). In reviewing the magistrate judge's detention order, the court must undertake an independent review, giving her decision such deference as the care and consideration manifested by the magistrate judge warrant. *United States v. Simone*, 317 F.Supp.2d 38, 42 (D.Mass.2004).

When asserting the risk of flight as a basis for detention, "the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure each defendant's appearance at future court proceedings." *United States v. Digiacomo,* 746 F.Supp. 1176, 1180–81 (D.Mass.1990) (citing *United States v. Mortis,* 785 F.2d 327, 328–29 (DC Cir.1986), cert. denied, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986)). In making the determination, the Court must consider the following factors most clearly outlined in *U.S. v. Merrill*, 2014 WL 2769148 (D.Mass.2014),:

   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug

   (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including:

        (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.... *U.S. v. Merrill*, 2014 WL 2769148, at 4-5 (D.Mass.2014).

It is important to note that this Court considers "weight of the evidence" as the least important factor when determining risk of flight in a complex case with voluminous documents. *Id.* at 5

## STATEMENT OF FACTS

Lustgarten appears before this court on a Superseding Indictment returned on April 1, 2015 by a Grand Jury convened in Boston. He is charged with participating in an international money laundering scheme involving the proceeds of drug trafficking in the United States. (Indictment ¶¶ 10-14.) More specifically, the Indictment alleges that Lustgarten controlled numerous foreign bank accounts located in Hong Kong, Singapore, Panama, and elsewhere, and that he used those accounts to launder millions of U.S. dollars that were the proceeds of drug trafficking in the United States, and that he concealed the nature, source, and ownership of the drug money. (Indictment ¶¶ 2-5, 10, 12.) Lustgarten also is charged with obstructing an official proceeding by providing false information to federal investigators from the Drug Enforcement Administration and the Department of Homeland Security, Homeland Security Investigations, about the nature and scope of his involvement with co-defendant Salomon Bendayan.

(Indictment ¶¶ 11, 13 & Counts II and III).  The government's preliminary calculations of Lustgarten's advisory Sentencing Guidelines Range reflect a life sentence.  (Miami Detention Transcript at 6.)  However, the sentence is capped by statute at twenty years.  (*Id.*)

*Detention Hearing #1 (Miami)*

On April 8, 2015, Lustgarten was arrested in Florida.  On April 13, 2015, United States Magistrate Judge Edwin Torres conducted an evidentiary detention hearing in the United States District Court for the Southern District of Florida.  At the outset of the hearing, the Court elicited a factual proffer from the government.  The Court then permitted Defendant to cross-examine Special Agent Phillip Lavoie.  (Miami Detention Transcript at 6-9.)

In response to defense counsel's questions, Special Agent Lavoie testified that, based on the investigation, Lustgarten represented that a business owned by him, known as Henlux, was involved in purchase-order financing in international trade involving Venezuela; in reality, the government proffered, Lustgarten used Henlux "as a cover to launder money for drug cartels and others." (Miami Detention Transcript at 8, 13.)  Lustgarten "made a business of gathering U.S. dollars and making them available in places where they are hard to come by, such as Venezuela, and the significance of that is the source of those dollars.  Mr. Lustgarten is well aware that at least $40 million and possibly $100 million comes from drug cartels or paramilitary organizations." (Miami Detention Transcript at 8-9.)  During the investigation, agents monitored court-authorized intercepted telephone calls between Lustgarten and co-defendant Salomon Bendayan.  (Miami Detention Transcript at 15.)  In addition, for a period within the past five years, Lustgarten was a "source of information" for the government.  DEA Special Agent Brian DeJoy was the primary contact for Lustgarten, and Special Agents DeJoy and Lavoie met in

person with Lustgarten. (Miami Detention Transcript at 17-19.) During these meetings, Lustgarten provided false information to the government regarding his money laundering activity and his association with certain people. (Miami Detention Transcript at 18.)

Moreover, during the detention hearing, the government proffered that Lustgarten has access to millions of dollars as well as a network of contacts all around the world. (Miami Detention Transcript at 24.) As acknowledged by his attorney at the detention hearing, the government has taken steps to freeze Lustgarten's accounts. (Miami Detention Transcript at 25.)

At the close of the hearing, United States Magistrate Judge Torres noted that "this case involves a substantial amount of money, far more than I have ever seen, number one. More importantly than that, there are significant foreign ties that the Defendant has . . . . [T]here is a concern that, if he were to flee, he would not be extraditable given the governmental situation in Venezuela." (Miami Detention Transcript at 27.) Although Magistrate Judge Torres observed that it is "possible" that the court in Massachusetts might approve an alternative to detention, ultimately, he found that detention of Lustgarten was warranted. (Miami Detention Transcript at 28.)

*Detention Order #1 (the "Miami Detention Order")*

In a written Order issued on April 16, 2015, Magistrate Judge Torres carefully examined the weight of the evidence and Defendant's history and characteristics and, based on his analysis, ordered that Lustgarten be detained pending trial.

In concluding that the weight of the evidence against Defendant is "substantial" (Miami Detention Order at 2), Magistrate Judge Torres noted the following facts, among others:

- Defendant was the subject of a multi-year investigation that revealed Defendant's

involvement in a "complex web of foreign companies operating under the guise of a 'purchase order financing' company to make otherwise illegal wire transfers." The investigation included court-authorized wiretaps, the execution of e-mail search warrants, and in-person interviews. (Miami Detention Order at 2.)

- Defendant used bank accounts in at least five countries and is responsible for laundering between $40 million and $100 million for drug cartels and paramilitary organizations in South America. (*Id*.)

- The investigation revealed that Defendant "lied to potential clients who were interested in laundering drug proceeds by falsely claiming to have DEA permission to move such funds. Defendant also lied to investigators from the DEA, HSI, and the U.S. Attorney's office in Boston, Massachusetts." (*Id*.)

- Defendant has extensive foreign ties, is not a United States citizen, is a citizen of Venezuela and Austria, and has "extensive foreign travel history." (*Id.* at 3.)

- Defendant "maintains business and familial relationships in Venezuela and other foreign jurisdictions that are known not to cooperate with the U.S. government with respect to extradition." (*Id.*)

- Defendant maintains access to millions of dollars overseas. (*Id.*)

In concluding that Defendant's history and characteristics also support detention, (Miami Detention Order at 3.), Magistrate Judge Torres noted the following facts, among others:

- Defendant was born in Venezuela, is a citizen of Venezuela and Austria, and, at the time of his arrest, possessed valid Venezuelan and Austrian passports. (Miami Detention Order at 3.)

- Defendant has an extensive international travel history, including travel to and from Venezuela, Panama, Europe, and Asia.  (*Id.*)

- Defendant has siblings that reside in Panama and Venezuela.  Defendant previously resided in Venezuela and now regularly resides in Panama.  Defendant also maintains a residence in South Florida.  (*Id.* at 3-4.)

- Defendant has "extensive financial means."  In particular, "Defendant reports an income of $30,000 a month in addition to checking and savings accounts with balances totaling $65,000."  Defendant owns luxury automobiles and reported to Pretrial Services that his Panama residence is owned in full.  (*Id.* at 4.)

Magistrate Judge Torres concluded that "based on a preponderance of the evidence – in particular the grand jury's probable cause finding that Defendant committed the offenses with which he is charged in this case, the Defendant's significant foreign ties, the sheer amount of money involved in this case, the and the severity of the allegations against Defendant – that Defendant would pose a serious risk of flight if released."  (Miami Detention Order at 4.)

*Detention Hearing #2 (Boston)*

LustgartenLustgarten was brought to Boston by the United States Marshals Service and was arraigned before Magistrate Judge Judith Dein on May 7, 2015.  Over the objection of the government, Lustgarten was granted a second evidentiary hearing regarding detention, which was held on June 12, 2015, before Magistrate Judge Dein.  As agreed by both parties, no witnesses were called and evidence was entered by proffer.

The government proffered evidence that the Defendant is a citizen of both Venezuela and Austria, but has a residence in Panama.  (Boston Detention Transcript at 4.)  The government

further proffered that the Defendant has access to "tremendous resources," including bank accounts in Singapore, Hong Kong, Switzerland, Austria, and Colombia. (Id.) The government entered into evidence a written summary of accounts known to investigators to be controlled by the Defendant. (Id.) The summary, marked as Exhibit 1 (attached hereto and incorporated herein), illustrates an estimated total of $546 million controlled by the Defendant during a four-year period. (*Id.* at 4 and 21.) The government submitted that at trial it was prepared to prove that a "significant portion of these funds come from drug cartels in South America." (*Id.* at 5.) When asked by the court, counsel for the Defendant confirmed that the Defendant did indeed control the monies identified by the government, but denied knowing that the funds included "drug money." (*Id.* at 14.)

The government also stated that post-arrest, three additional bank accounts previously unknown to investigators were discovered when attempts were made by friends and family members of the Defendant to access funds on his behalf. (*Id.* at 22.)

To demonstrate the strength of its case, the government proffered a written copy of a judicially intercepted email that contained an electronic chat conversation between the Defendant and "a corrupt Swiss banker who he is friends with and at this point is an unindicted co-conspirator." (*Id.* at 6.) The email chat conversation was marked as Exhibit 2, (attached hereto and incorporated herein), and quotes the Defendant admitting to having conducted business with tax evaders, drug dealers, money launderers, and someone trying to conduct financial transactions for or with Iran. (*Id.* at 8-9.) The government stated that at trial it is prepared to demonstrate that one money launderer who did business with the Defendant, identified in the chat conversation in Exhibit 2 by name as "Maffi," is also known to the Defendant as a drug

-8-

trafficker.  (*Id.* at 9.)

Lustgarten failed to offer any significant new evidence to support pretrial release.  As Exhibit 3, the Defendant admitted into evidence a short excerpt from the Grand Jury testimony of HSI Special Agent Philip Lavoie.  (*Id.* at 16-17.)  The Defendant claimed the testimony was evidence that the Defendant did not admit on any judicial intercepts to moving drug money.  (*Id.* at 13.)  Instead of directly addressing the issues raised by the government, defense counsel stated that the Defendant "is of the Jewish faith and he is religious," and that he "makes sure that everybody is kosher."  (Boston Transcript at 16.)

The Defendant also stated that he was in the legitimate business of financing on behalf of Venezuelan companies, who often have difficulty obtaining credit or paying their bills on time.  (Boston Transcript at 15.)  To which the court replied,

> But I have here an excerpt from a telephone conversation that seems to indicate that the intent of doing that, and I recognize this as a snippet of what the information is here, but I do have what the government has given me which indicates that there are people with whom the defendant is doing business who are known to him to be committing crimes…

The Defendant also offered to put up real property with an estimated value of $1.3 million, held in the name of three family members, as a surety for appearing at future court appearances.  (*Id.* at 17-18.)

*Detention Order #2 (the "Boston Order")*

At the conclusion of the hearing, Magistrate Judge Dein denied Defendant's motion for pre-trial release, stating

> …right now I have an indictment and I am bound by that indictment as to the facts of that indictment as of this point. The allegations in the indictment and the amount of money that the

>defendant has access to does make this the classic case where he will be detained as a risk of flight… I do have an incredible amount of money in undefined places and ties throughout the world. So it is with sadness, but I do find that the defendant does need to be detained. (Boston Transcript at 24.)

In a written Memorandum and Order issued on April 16, 2015, Magistrate Judge Dein ordered that Lustgarten be detained pending trial. (Boston Detention Order at 8, Docket No. 59.) Magistrate Judge Dein first considered the offenses charged and the weight of the evidence, and then concluded, "The indictment, itself, establishes probable cause that the defendant committed the charged offenses. At this stage of the proceedings the evidence against the defendant is strong and supports his pre-trial detention." (*Id.* at 6.)

Magistrate Judge Dein also considered the history and characteristics of the Defendant, including the fact that family members were willing to post over $1 million in real property as surety for his release. (*Id.* at 6-7.) Magistrate Judge Dein adopted the finding of Magistrate Judge Torres in the Miami Detention Order,

>This Court finds, based on a preponderance of the evidence – in particular the grand jury's probable cause finding that Defendant committed the offenses with which he is charged in this case, the Defendant's significant foreign ties, the sheer amount of money involved in this case, and the severity of the allegations against Defendant – the Defendant would pose a serious risk of flight if released. 18 U.S.C. § 3142(g)(3)(A). There are no conditions or combination of conditions that may reasonably assure Defendant's presence at trial, making detention appropriate. 18 U.S.C. § 3142(e). (*Id.* at 7, quoting Miami Detention Order at 4.)

Magistrate Judge Dein then added, "while the court is appreciative of the willingness of family members to post their property, given the amount of money at issue in this litigation, the posting of this property does not adequately serve as a deterrent to insure that the defendant will not flee." *Id.*

-10-

## ARGUMENT

Two different Magistrate Judges have independently found that no conditions exist to reasonably assure Lustgarten's appearance at trial. Their findings are correct and have not been contradicted by any new evidence put forth by the Defendant.

Where, as here, following an evidentiary hearing, "no condition or combination of conditions will reasonably assure the appearance of the person as required," a judicial officer may detain a defendant pending trial. 18 U.S.C. § 3142(e)(1).[1] The government bears the burden of establishing that the defendant poses a flight risk, by a preponderance of the evidence. See, e.g., United States v. Rose, No. 11-CR-10062 (NMG), 2012 WL 2500497, at *1 (D. Mass. June 26, 2012) (Gorton, J.). In evaluating the risk of flight, the Court must consider the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the danger that the defendant poses to the community. See 18 U.S.C. § 3142(g).

Lustgarten has ample incentive to flee. He is faced with serious charges with a statutory

---

[1] **Error! Main Document Only.**The Supreme Court has indicated that the government has a substantial interest in ensuring that an accused person will be present at trial, and that, in appropriate cases, the detention of defendants is a "legitimate means of furthering that interest." Bell v. Wolfish, 441 U.S. 520, 534 (1979) (citations omitted); see United States v. Salerno, 481 U.S. 739, 749 (1987) ("respondents concede and the Court of Appeals noted that an arrestee may be incarcerated until trial if he presents a risk of flight . . . .") (citing Bell, 441 U.S. at 534). The First Circuit similarly has noted that "the right of an accused person to bail, while critically important, is not absolute. Where risk of flight is unusually great, a court may deny bail and keep a defendant in custody in order to insure that the trial will take place." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (citations omitted). In appropriate cases, the First Circuit has repeatedly affirmed the pretrial detention of defendants on risk-of-flight grounds. See, e.g., United States v. Cruz-Reyes, 229 F.3d 1134, 2000 WL 1160441, at *1 (1st Cir. July 5, 2000) (*per curiam*) (unpublished op.); United States v. Sullivan, 7 F.3d 219, 1993 WL 367434, at *2 (1st Cir. Sept. 22, 1993) (*per curiam*) (unpublished op.); United States v. Dillon, 938 F.2d 1412, 1417 (1st Cir. 1991).

maximum penalty of twenty years and a contemplated advisory Guidelines range that far exceeds the statutory maximum. Magistrate Judges in both Miami and Boston have found after listening to descriptions of the government's evidence, the case against Lustgarten is strong.

As a Venezuelan citizen, Lustgarten's incentive to flee to Venezuela is significantly heightened, and Magistrate Judge Torres' concerns regarding the potential challenges presented by extradition from Venezuela are very real. Simply stated, if Defendant were to flee to Venezuela – where he maintains a residence, has substantial family ties, and holds assets – he will be beyond the reach of the United States and will likely never have to face the charges against him. In particular, on May 20, 2015, Assistant U.S. Attorney Linda Ricci contacted the Office of International Affairs at the United States Department of Justice and confirmed that the Constitution of the Bolivarian Republic of Venezuela prohibits extradition of a Venezuelan national by the Venezuelan authorities to a foreign country. Article 69 of the Venezuelan Constitution states (translation in italics):

> **Artículo 69.** °
> La República Bolivariana de Venezuela reconoce y gara asilo y refugio.
> *The Bolivarian Republic of Venezuela recognizes and guarantees asylum and refuge.*
>
> Se prohíbe la extradición de venezolanos y venezolanas.
> *Extradition of Venezuelans is prohibited.*

Therefore, contrary to defense counsel's assertion during his first detention hearing that the Venezuelan authorities would extradite Lustgarten "in a heartbeat" (Miami Detention Transcript at 22.) – the Venezuelan Constitution specifically prohibits his extradition to the United States.

Furthermore, Lustgarten has the financial means to flee. As found by a federal grand jury

-12-

sitting in this District, there is probable cause to believe that Lustgarten used bank accounts controlled by him to launder millions of U.S. dollars that were the proceeds of drug trafficking in the United States.  (Indictment ¶ 10.)  In particular, the First Superseding Indictment alleges, *inter alia*:

> LUSTGARTEN purchased drug money in U.S. dollars on the black, or parallel, market and sold the U.S. dollars to legitimate companies in Venezuela in exchange for Venezuelan bolivars.  LUSTGARTEN received drug proceeds from Mexico and Colombia including millions of U.S. dollars in drug proceeds that others known and unknown to the grand jury caused to be transferred to LUSTGARTEN's Rosemont accounts in Florida from bank accounts associated with two companies in Colombia . . . .
>
> . . . .
>
> Following the seizure of the Rosemont Accounts and LUSTGARTEN's accounts . . . on or about March 25, 2009, LUSTGARTEN opened accounts in Hong Kong and Singapore and used those accounts to receive millions of U.S. dollars that were the proceeds of drug trafficking in the United States.  LUSTGARTEN concealed the nature, source, and ownership of this drug money by falsely claiming that the money was a repayment of a loan from his purchase order financing business.

His substantial international ties, both business and personal, are fairly considered in any assessment of his risk of flight.  See United States v. Mardakhayeu, No. 10-CR-10196, 2010 WL 3168631, at *1 (D. Mass. Aug. 9, 2010) (defendant's business and financial connections in Belarus contributed to court's decision to affirm pre-trial detention on risk-of-flight grounds).

Therefore, in light of the strength of the government's evidence, the potential for a very long sentence of incarceration, Lustgarten's substantial financial resources, Lustgarten's extensive foreign ties, and the government's inability to extradite Lustgarten from Venezuela, the Court's order of detention appropriately recognizes that there is no combination of conditions

that will reasonably assure his appearance. Moreover, Lustgarten has been charged with obstruction of an official proceeding, based on his materially false statements to federal agents, which suggests that he would fail to obey any order of release on conditions. (Miami Detention Transcript at 9.)

## CONCLUSION

For all the foregoing reasons, Lustgarten's Appeal of Magistrate Judge's Order of Pre-Trial Detention should be denied.

        Respectfully submitted,

        M. KENDALL DAY
        CHIEF, ASSET FORFEITURE AND MONEY
        LAUNDERING SECTION

By:  /s/ *Joseph Palazzo*
     Joseph Palazzo
     Trial Attorney
     U.S. Department of Justice, Criminal Division
     1400 New York Avenue NW
     Washington, DC 2005
     (202)445-7910
     Joseph.palazzo@usdoj.gov

Dated: July 8, 2015

## **CERTIFICATE OF SERVICE**

The government hereby certifies that the foregoing was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (ANEF@) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Joseph Palazzo*
Joseph Palazzo
Trial Attorney
US Department of Justice

Dated: July 8, 2015