UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br><br>UNITED STATES OF AMERICA )<br> )<br> )<br>v. )<br> )<br> )<br> )<br>MARTIN LUSTGARTEN ACHERMAN )<br> )<br>_____) | Criminal Action No. 15-10046-LTS |

ORDER ON DEFENDANT'S APPEAL FROM ORDERS OF DETENTION
AND RELATED SCHEDULING ORDERS

July 30, 2015

SOROKIN, J.

A grand jury sitting in the District of Massachusetts indicted Martin Lustgarten

Acherman on one count of Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h)

spanning the period from 2007 to the present. The indictment included a Money Laundering

Forfeiture claim. Doc. No. 3. Federal agents arrested Acherman on April 8, 2015 in Florida

pursuant to an arrest warrant issued by this Court. Doc. No. 18. The Government sought

Acherman's detention, arguing he posed a serious risk of flight under 18 U.S.C. § 3142(f)(2)(a).

Miami Det. Hr'g Tr. at 6-7, April 13, 2015, ECF No. 10. After an initial appearance and

detention hearing, which included testimony from live witnesses, Magistrate Judge Torres

detained Acherman. See Miami Det. Hr'g Tr., April 13, 2015, ECF No. 10.

Subsequently, the grand jury issued a First Superseding Indictment adding a second count

charging Acherman with Conspiracy to Obstruct an Official Proceeding in violation of 18 U.S.C.

§ 1512(k), arising out of an earlier investigation into the conduct generally underlying Count I.

The superseding indictment also added a third count charging Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2), arising out of actions alleged to have occurred on February 7, 2014.  Doc. No. 16.  Magistrate Judge Dein of this Court arraigned Acherman on the Superseding Indictment on May 7, 2015.  Doc. No. 37.  On May 15, 2015, Acherman filed a document styled a "Motion for Reconsideration of Order of Pre-Trial Detention," Doc. No. 42, which appears both to seek reconsideration of the prior detention order based on some new discovery and to appeal Judge Torres's decision to the undersigned.  The Court referred this Motion to Magistrate Judge Dein.  See Doc. No. 14.  On June 3, 2015, Judge Dein held a detention hearing during which the parties agreed to proceed by proffer.  Doc. No. 51; Doc. No. 54.  On June 16, 2015, Judge Dein denied Acherman's Motion for Reconsideration and reaffirmed the Order of Detention in a considered and thoughtful written opinion.  See Doc. No. 59.

On June 24, 2015, Acherman filed an appeal under 18 U.S.C. § 3145(b) from both Judge Torres's and Judge Dein's decisions ordering detention.  Doc. No. 71.  After briefing by the parties, the Court held a hearing on the appeal on July 10, 2015.  Doc. No. 85.  At the conclusion of the hearing, the Court provided Acherman until Friday, July 17, 2015 to file any further proposed supplemental conditions of release in support of his appeal.  Id.  Acherman supplemented his appeal with several proposed conditions.  Doc. No. 90; Doc. No. 90-1.  Specifically, he offers to post three properties with equity totaling approximately $1.7 million, to surrender his passports and travel documents, and to remain at his apartment in Florida under home detention enforced by both electronic monitoring and a private security firm, "Florida Agency for Investigative Services, Inc."  Doc. No. 90 at 1-3.  Acherman proposes that the Florida agency install various monitoring cameras at his home and post a single round-the-clock

2

guard at his home (seemingly, a retired police or law enforcement officer) to ensure compliance with home detention.  Doc. No. 90-1 at 1-2.  Under the terms of his proposed contract with the Florida agency, the Florida agency would supply two guards when he left the home for meetings with his attorney or court appearances.  Doc. No. 90-1 at 2.  The contract would also limit the number of non-family visitors at the home at any one time.  Id.  Acherman would pay the costs of the Florida agency's services, which appear to be at least $35,000 per month.  See Doc. No. 90-1 at 6-14.  In a second filing, Acherman proposes, as an alternative, another private security firm which hires present and former law enforcement officers to serve as private security guards. The Government responded to Acherman's proposed conditions with a supplemental memorandum that pressed its request for detention notwithstanding the proposed conditions. Doc. No. 101.

De novo review applies to Acherman's appeal and request for release.  United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990).  The Government bears the burden of proof by a preponderance of the evidence to establish that Acherman poses a serious risk of flight and that no condition or combination of conditions can reasonably assure his appearance.  18 U.S.C. § 3142; United States v. Salerno, 481 U.S. 739 (1987); United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991); United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990) (citing United States v. Vortis, 785 F.2d 327, 328-29 (D.C. Cir. 1986)).  The Court further incorporates and adopts the legal standards set forth in Judge Dein's decision.  See Doc. No. 59 at 2-4; see also 18 U.S.C. § 3142.

The Superseding Indictment establishes probable cause to believe that Acherman committed the offenses charged.  The Government has submitted additional evidence and proffers tending to show that (1) Acherman laundered huge sums of money, at least $40 to $100

million dollars and perhaps as much as $546 million dollars; (2) Acherman is not a citizen or permanent resident of the United States; (3) Acherman is a citizen of Venezuela (he is also a citizen of Austria) and the constitution of that nation bars extradition of its own citizens; and (4) Acherman's alleged clients include persons with access to substantial amounts of money and who allegedly are involved in illegal drug distribution or other illicit activities.  See Doc. No. 81-1 at 2; see also Miami Det. Order at 2-3, April 16, 2015, ECF No. 9; Doc. No. 59 at 5-6; Doc. No. 67 at 5-6.  The Government also points to intercepted conversations in which Acherman allegedly acknowledges doing business with drug dealers, see Doc. No. 59 at 5 (citing intercepted conversation) and Det. Appeal Hr'g Ex. 4 at 6 (quoting Acherman as saying "You gotta fly under the radar"), and represents that it intends to call witnesses at trial to testify that Acherman knew he laundered drug money or other proceeds of specified illegal activities.  Doc. No. 67 at 5.

Acherman makes two main arguments supporting release.  First, he points to his strong family relationships, his lack of a criminal record, and the approximately $1.7 million offered by himself and his family as security.  Doc. No. 74 at 1-2; Doc. No. 90 at 1-2.  Second, he complains that he is a legitimate businessman suffering from pretrial incarceration and the seizure of virtually all of his assets by the Government.

The security, home confinement, and surrender of travel documents proposed by Acherman do little to mitigate the serious risk of flight in this case.  Given the amount of money Acherman undisputedly handled (undisputed for purposes of the detention hearing only), the amount of security is not significant.  Moreover, Acherman has not offered to post his home in Panama which he purchased unencumbered for approximately $1 million sometime in the last five years.  While he contends he has inadequate funds to flee, as a result of the Government's

seizure of all his assets, Acherman offers to hire a private security firm to enforce home

detention, an expense of approximately $35,000 per month, which suggests he is not as destitute

as he contends.  On the record before the Court, the Government has met its burden of proof.

They have presented substantial evidence, noted above, that supports finding a serious risk of

flight.  The security offered fails to mitigate in any meaningful way the risk of flight in this case.

Acherman's contention that he is now devoid of all assets and any means to flee is simply too

speculative a ground upon which to rely in the circumstances of this case, and the Court

specifically rejects that conclusion in light of the record as a whole and proposed employment of

the security firm.  Also significant is the substantial sentence of imprisonment Acherman faces if

convicted.  According to the Government, Acherman's guideline range includes a sentence of

life imprisonment and the statutory maximum on Count I is twenty years' imprisonment.  Doc.

No. 81 at 4.

Four further points bear mention.  First, Acherman proposes a private security firm to

enforce home detention, a possible condition first raised not by Acherman but by the Court at the

hearing.  Doc. No. 90 at 2-3; see also Doc. No. 90-1 at 1-3.  In this case, this condition does not

materially mitigate the serious risk of flight posed by Acherman's significant connections to

multiple foreign countries, lack of citizenship or other lawful or permanent status in the United

States, and access to substantial financial resources.  In the end, the release Acherman proposes

would depend entirely on a private security firm selected and paid by him.  The means and

vigilance of the private security firm's enforcement of any conditions of release is neither

specifically proposed nor otherwise obvious, and the source of the funds used to pay the firm is

unclear in light of Acherman's assertion that the Government has seized all of his assets.  In any

event, given Acherman's ties to foreign countries and access to cash, the Government has met its burden of proof despite the proposed security firm monitoring condition.

Second, Acherman points to an excerpt from a grand jury transcript asserting it establishes both prosecutorial misconduct and illustrates governmental overreach in this case. See Doc. No. 74 at 11-15; see also Doc. No. 74-3 at 2-3.  The plain reading of the one-page excerpt reveals no prosecutorial misconduct—a grand juror posed a somewhat lengthy, multi-part question which the prosecutor reformulated into several precise, pithy questions that were answered by the witness.  Afterward, the prosecutor asked generally if the witness had answered the grand juror's query.  Acherman cites no authority suggesting that the actions revealed by the transcript constitute misconduct.  The testimony from the witness, a federal agent, conceding that Acherman never referenced getting money from drug traffickers or that the money was drug related on the wiretaps does not carry the weight Acherman would have the Court place on it. The wiretaps encompass only a small portion of the relevant time period, and the Government has other evidence, it says, showing Acherman's knowledge and intent, evidence not captured by the excerpted portion of the grand jury testimony.

Third, Acherman filed a second supplemental memorandum and request for evidentiary hearing in support of his appeal.  Doc. No. 102.  In this memorandum, Acherman claims, in sweeping, conclusory language, that recent discovery disclosures support release; that prosecutors are failing to comply with their obligations to make timely (or complete) disclosure of exculpatory material; that the Government "is trying to figure how to avoid the embarrassment of having spent so much time and expense money [sic] only to have made a big mistake," Doc. No. 102 at 8; that the Government is improperly changing its theory of prosecution in mid-

stream; and that the Government misrepresented certain facts regarding a security firm included as part of Acherman's proposed supplemental conditions.

All discovery matters are presently pending before Magistrate Judge Dein.  Insofar as Acherman has any complaints regarding disclosures (or lack thereof), he must raise them before Judge Dein in the first instance.  The same applies to his complaint regarding insufficient computer access at the Wyatt Detention facility.  The Court has reviewed both the Government's memorandum and the exhibit submitted regarding the private security firm and has concluded that the parties are referring to two different sets of communications with the security firm. Finally, the disclosure letter appended to Acherman's submission, on the record before the Court in the context of an appeal of a detention order, does not change the conclusions described above or otherwise establish misconduct.

Fourth, Acherman filed an Addendum to his Second Supplemental Memorandum on July 29, 2015 (Doc. No. 105).  He asserts one Government prosecutor committed misconduct that was revealed fully only by late exculpatory disclosures made on July 27, 2015.  Whether the disclosure was "late" is a discovery question before Judge Dein in the first instance.  The underlying issue bearing on the merits of release or detention arises from the prosecutor's assertion before Judge Dein that a "Mr. Maffi," mentioned by Acherman in an online text conversation with an allegedly corrupt Swiss banker, "is a convicted drug trafficker," the implication being that Acherman's work with Maffi was evidence of his knowing participation in money laundering.  Acherman addressed this issue already.  See Doc. No. 80 at 7.  The Maffi related evidence described to the Court (both before and now), while certainly exculpatory in some respects, is not necessarily only exculpatory.  That is a determination not possible on the limited record before the Court.  In any event, however, the Court has not relied on the Maffi

related evidence in rendering its decision on this Appeal, nor does it appear to have been a central issue for Judge Dein, as release or detention turns on an application of Title 18's relevant detention provisions, not the alleged misconduct of the prosecutor.

CONCLUSION

Accordingly, Acherman's appeal, Doc. No. 71, is DENIED and the Order of Detention issued by Judge Dein, Doc. No. 59, is AFFIRMED.

The time period from May 15 to June 16, 2015 is EXCLUDED under the Speedy Trial Act due to the pendency of Acherman's Motion for Reconsideration.  18 U.S.C. § 3161(h)(1)(D). The time period from June 24 to July 29, 2015 is EXCLUDED under the Speedy Trial Act due to the pendency of Acherman's appeal seeking review of the order of detention.  Id.

The Government proposed commencing trial in early December, while Acherman seeks a trial date in August.  Seventy days remain—beginning July 31, 2015—under the Speedy Trial Act within which to commence trial of this matter in light of prior exclusion orders.  The Government shall make a filing, within seven days, setting forth its reasons to delay the trial until December.  The filing shall also include an articulation of the grounds supporting the exclusion of time from July 31, 2015 to the proposed trial date, the first Monday in December.  Acherman may respond to the Government's submission within seven days of its filing.  The Court will review those filings and establish a firm date for the trial of this matter.

SO ORDERED.

  /s/ Leo T. Sorokin          
Leo T. Sorokin
United States District Judge