UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 15-10046-LTS |
| | ) | |
| MARTIN LUSTGARTEN ACHERMAN, | ) | |
| SALOMON BENDAYAN | ) | |

---

ORDER ON DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE, OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF FLORIDA
UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 21(B)

October 16, 2015

SOROKIN, J.

The Court recites the relevant procedural history and factual background as set forth in

the pleadings and counsel's representations to the Court.

## I.    Introduction and Background Facts

At some point around 2007 or thereafter, federal agents in the Boston area (the "Boston

Agents") began investigating the laundering of the proceeds of drug transactions that had

occurred in the District of Massachusetts.  Doc. No. 171 at 10.  Their investigation led to the

seizure of numerous bank accounts, referred to as the "Rosemont" accounts.  Id. at 100.  Some of

the accounts, and many of the transactions, were located in Miami, Florida, within the Southern

District of Florida, while other accounts and transactions were overseas.  Doc. No. 10 ¶ 10.

None of these accounts were located within this District.  Although the government ultimately

returned much of the money it seized, Doc. No. 171 at 103, the Boston Agents continued their

investigation in conjunction with the United States Attorney's Office and grand juries in this

District.  Id. at 101.

The investigation focused on, among others, Martin Lustgarten-Acherman ("Lustgarten") and Salomon Bendayan.  Id. at 10, 101.  Lustgarten began working with the government.  Id. at 101.  Lustgarten, in the course of his efforts, allegedly asserted that he (Lustgarten) operated a legitimate international purchase finance business,[1] that he monitored carefully both the persons with whom he did business and the source of their funds, that Bendayan was a legitimate international businessman, at least as far Lustgarten knew, and that some others about whom Lustgarten spoke with the government engaged in illegal transactions.  During the investigation, which continued at least until early 2015, the government was investigating the movement of money through and to, inter alia, Florida, Switzerland, Venezuela, Panama, Columbia, Hong Kong, and Miami.  See Doc. No. 10 & 143.  At no point has the government suggested either that any money laundering transactions took place in Massachusetts, or that any financial accounts used in the course of the laundering were located in Massachusetts.

At some point while the Boston investigation was ongoing, federal agents in Miami (the "Miami Agents"), in conjunction with the United States Attorney's Office for the Southern District of Florida (and presumably a grand jury there), were investigating possible money laundering activities by Bendayan and others, potentially, but not necessarily, including Lustgarten.  Id. at 10.

The Boston investigation resulted in a grand jury here issuing a three-count First Superseding Indictment on April 1, 2015.  Doc. No. 10.  Count I of this Indictment charges Lustgarten, Bendayan, and others with money laundering conspiracy in violation of 18 U.S.C. § 1956(h).  Id. ¶ 16.  The conspiracy spans the period from 2007 through at least the April 1, 2015 date of issuance of the Indictment.  Id.  Count II charges only Lustgarten, with conspiracy

---

[1] The government does not contend that all of Lustgarten's business financial transactions constituted money laundering.

to obstruct the investigation in Massachusetts into the Count I money laundering conspiracy. Id. at 9. Count III also solely charges Lustgarten, with a specific act of obstruction of the investigation when he allegedly lied to an investigating agent during a meeting in Massachusetts in 2014. Id. at 10.

Although issued on April 1, the Superseding Indictment remained sealed. On April 7, 2015, a grand jury in the Southern District of Florida issued a one count Indictment, charging only Bendayan with money laundering conspiracy in violation of 18 U.S.C. § 1956(h). Doc. No. 120-1. The conspiracy allegedly occurred between August 2010 and January 2012, a conspiracy time period fully encompassed within the alleged duration of the money laundering conspiracy set forth in the District of Massachusetts Indictment. Id. at 1; see Doc. No. 10 ¶ 16. Other information further suggests substantial factual overlap between the two money laundering conspiracy charges. Both conspiracies involve Bendayan's international business activities. Both conspiracies involve some bank accounts in, and financial transactions occurring in, Miami. Both conspiracy charges encompass and specifically allege as a specified unlawful activity the manufacture, importation, sale, and distribution of a controlled substance. Neither conspiracy, as far as the Court is aware, involves bank accounts or financial transactions in the District of Massachusetts.[2]

Discovery in the course of the two cases has overlapped. The government attorneys prosecuting the case here have, during discovery, disclosed investigatory reports created by the Miami Agents as part of the Miami Agents' investigation. The Court understands that some bank accounts are at issue in both conspiracies, although each conspiracy implicates different

---

[2] This is not to say that the conspiracies are identical. The government reports that they involve different clients, different funds and different co-conspirators. Doc. No. 143 at 2. The government also states that the "two indictments are not known to involve allegations of laundering either the same funds, or on behalf of the same clients." Id.

transactions.  Bendayan has sought to delay his Miami trial so that he might obtain intercepted telephone recordings from Colombia and Argentina that the government here—but not in Miami—has sought via Mutual Legal Assistance Treaty ("MLAT") requests as part of its effort to gather evidence for the prosecution in this District.  Joint Mot. For Continuance of Trial Date, offered at October 1, 2015 hearing ("Exhibit 1"); see Doc. No. 171 at 33-34 (referencing the request at the October 1st hearing).  The government in Florida did not oppose this request for a delay in the trial date.  Exhibit 1 at 1.

The investigation and subsequent prosecutions also evidence the overlapping nature of the two conspiracies.  The two United States Attorney's Offices disagreed in their assessments of the possibility or value of certain potential cooperators within sight of their investigations (that they considered this a matter of shared interests highlights the overlapping nature of the two prosecutorial investigations), the relative strengths of their cases, and the role of each office in the investigation and prosecution of Bendayan and his associates.  These issues were disclosed, or at least alluded to, in a sworn affidavit filed in support of a Title III intercept application by one of the Boston Agents.  Aff. Submitted in Supp. of Appl. for the Renewed Interception of Wire Communications, offered at October 1, 2015 hearing ("Exhibit 2") ¶ 72; see Doc. No. 171 at 29-31 (discussing the Title III affidavit at the October 1st hearing).

The Assistant United States Attorney prosecuting the Indictment against Bendayan in Florida informed the district judge there that "the [two] cases are incredibly similar," Doc. No. 150 at 14.  He did qualify that statement, made on September 2, 2015, by candidly advising the Court that he "d[id]n't know the evidence [in Boston]," and that it was Bendayan's defense counsel who had so described to him the cases.  Id.; see id. at 12 (dating the statement as made on September 2, 2015).

Not only do the charges and discovery suggest overlap, but the course of the two prosecutions suggest a recognition by the respective United States Attorney's Offices of such overlap.  After the grand juries in the respective districts returned the two Indictments in early April 2015, the respective courts sealed each indictment.  The Southern District of Florida issued a warrant for Bendayan's arrest.  The District of Massachusetts issued warrants for both Bendayan's arrest and Lustgarten's arrest.  Doc. No. 13.

Coordinated arrests of the two men occurred on the same day.  On April 8, agents arrested Lustgarten in Miami, where he maintains a residence.  Doc. No. 18.  He made an initial appearance in the Southern District of Florida, where a Magistrate Judge ordered his pretrial detention; thereafter he was brought to Massachusetts for arraignment.  Doc. No. 29.  Also, on April 8, agents arrested Bendayan in Brooklyn, where he lives.  Doc. No. 171 at 12.  The arresting agents were the Boston Agents involved in the investigation here.  Id.  The agents brought Bendayan before a Magistrate Judge in the Eastern District of New York ("EDNY"), where he was released on, inter alia, the condition that he appear in the Southern District of Florida.  Id. at 12-13.  The Magistrate Judge did not order Bendayan to appear in the District of Massachusetts.  Id. at 13.  The AUSA in the EDNY representing the government did not make such a request of the Magistrate Judge, and the Boston Agents, although they had arrested Bendayan in Brooklyn, did not make that request to the AUSA in Brooklyn.  Id. at 12-13.  Accordingly, Bendayan did not appear in this District.  Although the government filed a return for the Lustgarten warrant, no such return was filed for the warrant to arrest Bendayan, perhaps reflecting the government's view that Bendayan had not been arrested on the warrant it sought

from this Court.[3]  But see Doc. No. 15 ¶ 3 ("On April 8, 2015, law enforcement authorities arrested LUSTGARTEN and BENDAYAN on the superseding indictment in this case.").

At a June 26, 2015 hearing regarding Lustgarten's case, well over two months after Bendayan's arrest on the Miami Indictment, the Court inquired regarding the status of Bendayan, as the docket did not reveal that he had appeared in this District.  The government indicated it was working out a date with the Magistrate Judge and Bendayan.  At that status conference, no one suggested to the Court the existence of any sort of agreement between the USAO in Miami and the USAO in Boston regarding the two proceedings, let alone an agreement not to proceed with the prosecution against Bendayan here until after the conclusion of the prosecution in Miami.

On September 2, 2015, the AUSA in Miami advised the Court there that "there was an agreement between the U.S. Attorney's Office in the district that he [Bendayan] would first deal with his charges here [in Miami] and then deal with his charges there [in Boston]."  Doc. No. 150 at 13-14.   When asked about this agreement at a hearing in this case on October 1st, both the DOJ attorney and the AUSA prosecuting the case in this district stated that their personal understanding encompassed only an agreement to permit Bendayan to appear first in Miami (rather than proceed in a serial fashion), but they candidly disclosed that neither of them had negotiated this issue with the USAO in Miami.  Doc. No. 171 at 11-12, 25-26.  Since the hearing, the government has supplied no further information on this point.

Bendayan now seeks dismissal of the Indictment against him on venue grounds, or, alternatively, transfer to the Southern District of Florida.  Doc. No. 120 at 11-25.  Lustgarten

---

[3] If in fact Bendayan was not arrested on the warrant issued by this Court on April 8, 2015, a point the Court is not resolving, the record contains no explanation for why both the agents and, upon his release in Brooklyn, the Marshals failed to execute the then-pending warrant.

seeks the same relief as to Count I.  Doc. No. 124 at 14-19.  The government has opposed both

motions, although the Court notes that the government's papers fail to address, at all, the

defendants' requests for transfer under Rule 21(b).  Doc. No. 123 (opposing Bendayan's venue

motion); Doc. No. 146 at 4-6 (opposing Lustgarten's venue motion).  The Court heard argument

from counsel at a hearing on October 1, 2015.  <u>See</u> Doc. No. 166 (Electronic Clerk's Notes from

the October 1, 2015 hearing).  Beyond the fact of two initially separate seemingly parallel, or

partially parallel, investigations, the government has provided no further explanation for the

decision to require Bendayan to face charges in both jurisdictions simultaneously.

## II.    Discussion

### A)    Dismissal of Count I

Under 18 U.S.C. § 1956(i)(2), "a prosecution for an attempt or conspiracy offense under

this section . . . may be brought in the district where venue would lie for the completed

offense . . ., or in any other district where an act in furtherance of the attempt or conspiracy took

place."  So long as such an act took place in this district, venue is proper, "even if a particular

coconspirator was not himself physically present in that district."  <u>United States v. Santiago</u>, 83

F.3d 20, 25 (1st Cir. 1996).  The Court will only grant a motion to dismiss for lack of venue if

the indictment does not "sufficiently allege[] conduct occurring in the District of Massachusetts

in furtherance of the conspiracy to commit money laundering."  <u>United States v. Condo</u>, No. 11-

cr-30017-NMG, 2014 WL 1400817, at *1 (D. Mass. Apr. 7, 2014).  At this stage, "the

allegations of the indictment and the unchallenged statement of proof of the prosecutor must be

accepted as true."  <u>United States v. Ferris</u>, 807 F.2d 269, 271 (1st Cir. 1986).

The Court finds that the First Superseding Indictment alleges sufficient facts to meet this

burden.  The Indictment alleges that Lustgarten aided the conspiracy by "provid[ing] materially

false information to the DEA in Boston, Massachusetts."  Doc. No. 10 ¶ 14.  Taken as true, this

act, committed by a coconspirator, suffices, on the motion to dismiss posture, for venue purposes

for both Lustgarten and Bendayan.  The government's ability to prove this allegation is a

question for trial.  See United States v. Harris, No. 09-10243-MLW, 2012 WL 2402788, at * 1

(D. Mass. June 26, 2012) (citing United States v. Lanoue, 137 F.3d 656, 661 (1st Cir. 1998)).

B)      Transfer of Count I

"Upon the defendant's motion, the court may transfer the proceeding, or one or more

counts, against that defendant to another district for the convenience of the parties, any victim,

and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).  This is a conjunctive

test—the Court must be satisfied that transfer furthers both convenience and the interests of

justice.  See United States v. Quiles-Olivio, 684 F.3d 177, 185 (1st Cir. 2012).  Some factors for

the Court to evaluate in considering a motion to transfer include: 1) the defendants' locations; 2)

witnesses' locations; 3) location of relevant events; 4) location of key evidence; 5) disruption to

defendants' lives without transfer; 6) expense to the parties; 7) counsel's location; 8)

accessibility of the trial location; and 9) docket condition of the transferor and transferee

districts.  Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964); accord Quiles-

Olivo, 684 F.3d at 184-185 (reciting the same, and citing Platt); see also United States v. Peake,

No. 14-1088, slip op. at 15-17 (1st Cir. Oct. 14, 2015) (referencing the Platt factors in deciding a

21(b) motion).  Finally, a motion to transfer constitutes waiver of any venue objections to the

Southern District of Florida.  See United States v. Aronoff, 463 F. Supp. 454, 457 n. 2 (S.D.N.Y

1978).  Nothing suggests docket conditions in either district bear on the request.  As for the

remaining factors, since the government has not addressed them specifically in its papers, the

Court evaluates the requests based upon the totality of information and arguments before it.

The Court finds that transferring this case to the Southern District of Florida furthers both considerations.  The Southern District of Florida is clearly a more convenient forum.  Venue lies there—bank accounts and financial transactions underlying the Count I money laundering conspiracy exist or occurred there, a point conceded by all counsel at the October 1st motion hearing.  See Doc. No. 171 at 46-47, 57.  Lustgarten, although a foreigner, maintains a residence in Miami, and his counsel practices in Miami.  Doc. No. 10 ¶ 2; Doc. No. 124 at 18.  Similarly, Bendayan has a residence and bank accounts in Florida, including the accounts at issue in both conspiracies.  Doc. No. 120 at 9.  The civilian witnesses in this case, other than the defendants, appear to reside in Florida or overseas, and none appear to reside in Massachusetts.  Other than the investigation itself, Count I appears to have only two ties to this District—Lustgarten allegedly tried to obstruct the Boston Agents' investigation (and related grand jury proceedings) into the Count I conspiracy, and some of the proceeds laundered were proceeds of drug transactions that occurred in Massachusetts.  Doc. No. 171 at 64.  Plainly, Miami has a stronger connection to the money laundering conspiracy than Boston.

A number of other factors bear on the Rule 21(b) request of the Defendants.  First, Bendayan faces simultaneous prosecution in two reasonably far-flung Judicial Districts under the same statute, for conduct allegedly occurring during the same overall time period, involving some common or overlapping information.[4]  This imposes a substantial burden on Bendayan for no proffered reason, let alone an important or sufficient consideration. Second, given the

---

[4] The conclusion that the two conspiracies involve overlapping information and discovery is not defeated by the government's assertion that the two conspiracies involve "different funds, different clients and different schemes." That is, the two conspiracies involve overlapping information and discovery even accepting the government's contention that the separate charges pose no double jeopardy violation.  The Court rejects the government's assertion that the two money laundering conspiracy charges involve "different time periods" given that the Boston conspiracy alleges a 2007 to 2015 time frame and the Miami conspiracy alleges a 2010 to 2012 time period. Clearly, these two time periods overlap and present a wholly different situation than, for example, a 2008-2010 conspiracy on the one hand and a 2013-2015 conspiracy on the other.

overlapping information and the course of the proceedings, the two cases require the type of close coordination that occurs only when both charges are pending in the same Judicial District, if not before the same District Judge. Third, transfer imposes some inconvenience on the government in that the investigating agents work here. This fact, though it favors the government's choice of venue, is of less weight in this case, given the other considerations and the agents' status as government employees.

Finally, Count I charges a number of defendants. While not always the case, here transfer is not a back door means to obtain severance. Cf. United States v. Charles, No. 1:12-cr-00125-JAW, 2013 WL 997456, at * 3 (D. Me. Mar. 13, 2013) ("If [two of the three defendants'] cases are transferred and [the third defendant's] is not, this would effect a severance . . . ."). Lustgarten also seeks transfer. No other defendant has appeared. The government was unable to say when any other defendant would appear. Doc. No. 171 at 123-25. The trial schedule alone may result in severing Lustgarten and Bendayan from any other defendants, potentially even with the June 2016, trial date sought by the government, a point counsel for the government recognized at the hearing. Id. Accordingly, in view of the totality of the circumstances, and in light of all the foregoing considerations, I find Bendayan has met his burden to demonstrate both that the interests of justice and the convenience considerations warrant transfer. Thus, the Court ALLOWS Bendayan's alternative motion to transfer the sole charge against him to the Southern District of Florida.

For largely the same reasons, the Court also ALLOWS Lustgarten's motion insofar as he requests transfer of Count I to the Southern District of Florida. Two further points bear mention as to Lustgarten. First, the reasons the government advanced in opposition to the various severance requests support transfer of the Count I conspiracy charge against Lustgarten to the

10

Southern District of Florida along with the transfer of the charge against Bendayan. Additionally, retaining Count I here while transferring Count I as to Bendayan runs the risk of inconsistent rulings between the two courts and would impose an unfair burden on the government to present the same case twice in two reasonably far flung districts.

The Court recognizes that this ruling leaves Counts II and III, both of which apply only to Lustgarten, in this District, meaning Lustgarten now faces the prospect of having separate trials in different districts.  However, as Lustgarten chose to limit his request for transfer solely to Count I, Doc. No. 124 at 19 ("[I]n the event the court does not dismiss Count One, then in that event this Count One must be transferred as a matter of law to the Southern District of Florida[.]"), the Court does not have authority to transfer those Counts.  See Fed. R. Crim. P. 21(b) (giving district courts authority to transfer venue "[u]pon defendant's motion") (emphasis added); see also United States v. White, 590 F.3d 1210, 1213 (11th Cir. 2009) ("The district court may not, sua sponte, change venue, even if it believes that such action would be for the defendant's own good.") (internal citations and quotations omitted).   Because the obstruction counts have some interrelationship with the Count I conspiracy, this resolution may well result in some duplication here with some discovery or evidence presented at trial in Miami regarding Count I.  The Court has considered this effect in its decision to transfer Count I and, on balance, has concluded that nonetheless the scales favor transfer.

## III.    Conclusion

For the foregoing reasons, the Court ALLOWS Lustgarten's (Doc. No. 124) and Bendayan's (Doc. No. 120) motions in the alternative for transfer of venue, pursuant to Federal Rule of Criminal Procedure 21(b), of Count I to the Southern District of Florida.

Previous orders of the Court have excluded time through and including October 26, 2015. Docket #145.  Now, the Court hereby EXCLUDES under the Speedy Trial Act the time period: from August 11, 2015 to October 14, 2015, pursuant to 18 U.S.C. § 3161(h)(1)(D) as to Lustgarten; from August 24, 2015 to October 14, 2015, pursuant to 18 U.S.C. § 3161(h)(1)(D) as to Bendayan; and the period August 11, 2015 to August 24, 2015, pursuant to 18 U.S.C. § 3161(h)(3)(B)(6) as to Bendayan.

The Court hereby Orders the Clerk of the United States District Court for the District of Massachusetts to transfer to the Southern District of Florida Count I of the Superseding Indictment as against Defendants Lustgarten and Bendayan along with a certified copy of the file in this case.  The Court further recommends the coordination, or, if warranted under the rules and procedures of the Southern District of Florida, consolidation, for at least pretrial management, of this case with United States v. Bendayan, 1:15-cr-20234-MGC, which is pending in the Southern District of Florida.

The parties shall file a joint status report within seven days setting forth their joint or separate positions regarding the date for trial of Counts II and III.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge